May it please the Court, I am Holly Cooper and I'm appearing today on behalf of Petitioner Jesus Villarreal-Rodriguez. Your Honor, Petitioner has contended throughout the administrative appellate process as well in his petition review that he is not removable for his convictions for possession of a controlled substance and under the influence of a controlled substance. First, this Court and the Board have both recognized that the California State Controlled Substances Act is broader than the federal scheme of federally prescribed controlled substances to which the two statutes at issue for Mr. Villarreal, California Health and Safety Code 11377 and 11350 are overly broad. When the statute is overly broad under the mandates of Taylor and Shepard, the Court must delve into a modified categorical approach and is limited in their inquiry to determining the factual basis of the plea. And here the Court is allowed to delve into, to look into the plea colloquy, the plea agreement, the indictment, the judgment, or any explicit factual finding by the judge to which the defendant or the accused assented. The bottom line here is that you can't tell what he distributed, right? There was no distribution. It was merely a possession and an under-the-influence charge, Your Honor. But, yes, Your Honor, the ultimate question is that we cannot identify the specific controlled substance to which Mr. Villarreal possessed or ingested. So then the other bottom line, as it were, is the government's position that it ought to have another shot. The government's position is that this case should be remanded under the emerging case law doctrine. However, as we note in our reply brief, that the two cases the government relies on, both Cisneros-Perez was decided before the BIA issued its decision. And they said that the emerging case law doctrine that they referred to was the emerging case law with respect to the modified categorical approach. However, as this Court is well aware, both Taylor and Shepard, the Supreme Court precedent, have already defined this issue well before the August 2006 decision of the Board of Immigration Appeals. Well, so why shouldn't the BIA have the initial chance to interpret Mr. Villarreal's Rodriguez's case in light of Ruiz-Vidal? Because in 1965, the Board decided matter of polis. And in matter of polis, the identical issue was presented to the Board of Immigration Appeals as to whether the California scheme of controlled substances was broader than the Federal scheme, and whether or not a specific controlled substance had to be identified in the record of conviction. So we're dealing with a 40-year history of case law that mirrors Ruiz-Vidal, but it's at the Board level. So the Board had its own precedent in place at the time it issued the decision. It was in an adequate position to determine the removability of Mr. Villarreal. What in the record indicates that Mr. Villarreal exhausted his procedural due process claims before the IJ and the BIA? Your Honor, with respect to the procedural due process issues, one, we would contend that because he's attacking the constitutionality of the policies of the Executive Office for Immigration Review, it would have been futile to exhaust those before either the IJ or the Board of Immigration Appeals. That's a pretty tough rock to push uphill. And second, because the Board addressed it in their decision, they addressed whether the plea colloquy violated any notions of fair play in their decision, then this Court has held that exhaustion has been met where the Board has addressed it in the first instance. Tell me, what would be the harm to Mr. Villarreal if a remand was granted as requested by the government? The harm to Mr. Villarreal is that he has already gone to the Board of Immigration Appeals, excuse me, the Board of Immigration Appeals and asked them to apply precedent and they have not done so. And what Mr. Villarreal is trying to achieve is finality through this court in a position to recognize the precedent that exists with respect to removability and to vacate the order of removal and grant the petition for review rather than to remand to the Board and protract proceedings further and as he is detained during the course of these proceedings. Counsel, did you say that the Board addressed the due process claims? The Board did address the due process claims. Would you point me to the language that you contend addresses the due process claim? Yes, Your Honor. That if you, on the Board's decision. To the two-page decision? Yes, Your Honor. On the two-page decision, it says that Respondent does not contend and it says, nor does the record suggest. So they are identifying that the record does not suggest that the immigration judge's acceptance of Respondent's admissions as to the factual allegations and his concession of removability deprived him of a fair hearing. So the Board is addressing whether the record suggests there was a deprivation of a fair hearing. It said he did not contend. That seems to me that it wasn't before them. It says he does not contend, but then they, on their own accord, they do take the issue before them and it says he does not contend, comma, in a paraphrase, nor does the record suggest that he was deprived of a fair hearing. But we'd also like to emphasize that the Court need not even reach the issue of whether there was a constitutional deprivation at the plea colloquy stage because the issue that is before this Court has been squarely addressed and that is whether even a judicial admission can be binding on the Respondent in terms of the modified categorical approach. And this Court in both Tocatli as well as Cisneros-Perez has found that a judicial admission cannot bind a petitioner under the modified categorical approach. So despite his admission having possessed methamphetamines in the plea colloquy, it would not be binding in terms of supporting a charge of removability. It seems pretty counterintuitive when you think that someone tells you what they were charged with and, therefore, that then is unreliable. Yes, however, the Supreme Court It's sort of like alley, alley, oxen free. You know, that's, whereas, obviously, the government at that point sort of has a clear understanding of what it was. However, this Court does, this Court rightfully underscores in its precedent that the policy supporting this is for courts not to be able to determine guilt or innocence, to not have to administrative tribunal relitigating what the criminal court is in a place to do in a pro se petitioner. Well, I understand that's what the President says. It just sort of seems to go to the silliness of when you try to tell people, you know, I mean, I think we like to think that on some level we all like to think that courts deal with truth and justice and all of the above, as opposed to rules that make no sense at the end of the day. Thank you. Although many pro se petitioners are unaware of the ultimate facts to which they actually pled guilty to. In many instances Oh, I think they know what the dope was. In many instances, though, but that may not be the factual basis that the public defender fashioned for their plea. Many public defenders are aware of immigration consequences and plead people specifically to language as broad as any controlled substance, knowing that there's a polis defense potentially available for this individual, and he may not have been aware that his public defender carefully crafted a plea to broader language such as controlled substance, not thereby being able to identify it at a later date in the removal proceedings. Your Honors, I would also like to point out that the government, that the exclusive contention of the government in their brief is that this case be remanded to the Board of Immigration Appeals. However, Petitioner asserts in this proceedings that a remand is not necessary either under remand or the emerging case law doctrine. If it may please the Court, I'd like to reserve two minutes for rebuttal. Surely. Thank you, Your Honors. Mr. May it please the Court. My name is Ernesto Molina with the Office of Immigration Litigation, Washington, D.C., and I represent the respondent, Michael B. McCasey, in this case. You've already two times, well, I mean essentially the appellate commissioner said no, you don't get a remand, right? That's correct. And then so now you're asking for that again. That we do have case law that says you don't get two bites at the apple and all of that. Now we constantly slam petitioners on motions to reopen when they don't tell us how they're going to make a difference. I don't see anywhere in here how you're telling me what you would have done, you know, what you would do differently at this point. You can't get in the admission right now. That's not going to help you. And so why didn't you do it in the first place? And we've never seen anything that you would do differently. So why should we give you another bite at the apple? Well actually, even though he appears to have used meth, it appears to have been methamphetamine. Sure Your Honor. There's actually a very good reason why the Court should still remand in any event. First of all, the Department of Justice allows the Board of Immigration Appeals to act independently. So when we come here, we don't say things on behalf of the Board. We have to allow the Board to make its own decisions. However, according to the Department of Justice's review of this case, there's actually very good reason to allow the Board to look at this case again. First, the Board in this case never actually addressed the issue of whether or not or what the effect of this Court's precedent was. Well, they got Toccatli wrong at the time. I mean, because Toccatli, it was in existence at the time, right? Yes, Your Honor. But Toccatli was actually a slightly different question. You see, there it was true that the alien had conceded some of the factual elements underlying the offense and that that had been relied on. But it was only at the Court of Appeals phase, the petition for review phase, that the government argued a waiver, that the alien had waived it by not raising it, by conceding it, et cetera. Here, the circumstance is slightly different. Here, the Board made an express finding of waiver. Now, the Board has overall control of its procedures, and it has a large degree of discretion in handling those procedures. And the government would submit that the Board is entitled to say that under its procedures, when an alien waives or concedes removability and admits the allegations, you know, they can't raise a challenge on appeal. But you're not really arguing the waiver here, are you? That's exactly the point, Your Honor. You see, it's difficult for the Department of Justice to represent that finding by the Board when there's Ninth Circuit case law dealing with a different issue that seems in conflict. It's better for us to allow the Board to resolve the problem itself. Now, on remand, the Board could say, no, we're going to say that a waiver is sufficient to overcome this Ninth Circuit precedent, and it could do so under the Supreme Court's Brand X decision, where it can decide its own procedures differently from the Court of Appeals. But we don't have them doing that. Excuse me, Counsel. Did the government assert that the petitioner waived his right previously? Has that been – is this the first time that argument's been made? I'd have to check the government's submission to the Board of Immigration Appeals again, Your Honor. I don't have that on hand. I do know that the – Mr. Villareal's brief did raise it to the Board and suggested that he had not, in fact, waived. But did the government say he – that it had been waived? I will have to check the record on that again, Your Honor. I think so. So – but at that point, what is now at issue are the Board's procedures, which are thoroughly within its authority to decide, and reconciling it with case law in this circuit. And the government's submission is that, at the very least, the Board should be allowed to make that resolution in the first instance, particularly where the way it adjudicated it, it didn't have to decide the question of this Court's precedent. If you have more – if you can't use the admission and you don't have more than what's been put before the record, how are – how is the government ever going to win here? Well, it's – it's – You know, we can't – you know, doing futile acts, we – you know, frequently with petitioners, when they want – you know, but we can see that they've never made any showing that they're ever going to be eligible for relief. We deny their motions to reopen because they're going to lose. Correct, Your Honor. You know, we don't engage in futility. Correct, Your Honor. But here, the real problem is that it's not necessarily futile. The Board could say that an alien who concedes – who admits the allegations in his notice to appear and concedes removability can no longer present that issue on appeal to the Board of Immigration Appeals, and much as it did here. All right. And if that – if that was decided in front of the BIA already, then there would be no point to go back on that, right? Not necessarily, Your Honor, because the real problem we have is there are cases out there like Tocatli that the Board doesn't discuss. And so the Board doesn't explain its decision in consequence of this Court's decision. That's what this remand is in part to do. Right now, the Court doesn't have enough information to know whether the Board is saying its procedures overrule this Court's findings or not. For those reasons, it should go back to allow the Board to say either, one, it will – it's – this procedural fault notion will overcome this Court's precedent, or alternatively, it could simply say that it's uncomfortable with that and decide applying this Court's precedent. Counsel, where is the government's brief to the BIA in the record? Do you know? I'll hand it over. I can give it to you. I'll hand it over. Well, based on the position of the Respondent's brief, it looks like there may be none from the government. The government may have relied on the immigration judge's decision, Your Honor. I'm just being obtuse, I'm sure. But I don't understand how the BIA could come out any differently. I'm sorry, Your Honor? I mean, you just argued that apparently the BIA could come out differently on the issue of waiver. And I just – I'm having trouble understanding that. Well, it has more to do with something akin to a plea agreement, Your Honor, in a criminal case. When an alien or when a criminal defendant comes before a court, you know, the prosecution's obligation is to show the conduct beyond a reasonable doubt. When there's a plea agreement and there's a plea colloquy and the person admits in that colloquy, you know, the certain facts underlying the conviction, that's generally regarded as sufficient for a conviction to be entered. Now, it's curious as to why in immigration proceedings the same effect wouldn't happen. You know, why couldn't an alien concede what the records – what his conviction records would show? Yeah, I mean, I don't – I don't – I'm not quarreling with why he shouldn't, should or shouldn't. I'm just saying I don't understand how the BIA, in view of Tocatli and Cisneros, can come out differently since our precedent's bound to Trump. I mean, I don't agree with our precedent, but that has absolutely nothing to do with anything. And that's part – the government can't go too much on that because we don't have the board making that finding. But under Brand X, the Supreme Court's decision in Brand X, even though the court of appeals makes a decision on something, the agency is free on its own authority to decide questions that are within its prerogative. It's free to go in a different direction. What would be – I'm just coming back to the same thing. I hear that, but what within its prerogative could exist that could make it come out differently from our precedent? Well, the suggestion – the finding that when an alien admits the allegations and concedes removability – But we've held squarely opposite, so how can the BIA just say, we don't care what you said, we're just going to hold the opposite? Well, it's – the agency's going to have to provide an explanation for that under Brand X. Well, yes, and what would it possibly be? It would be that under its regulations, for example, at 1240.12 subsection C, that the immigration judge, when there is an admission of the facts and a concession of removability, may decide based solely on those allegations. No. See, I mean, my problem here is simply not whether that makes sense or not. Oh, sure. But we have squarely said otherwise. That is true, Your Honor, and in that respect, the government has been clear in asking for a remand saying let the agency resolve it. But it's been resolved. It may or may not have been, Your Honor. Okay. Okay. I'm sorry. I just don't – I don't understand how it has wiggle room. Well, again, it would have to decide that in the context of its procedures, not in terms of its law. Whether an alien has defaulted or not is a question different from what the – what of this Court's review of removability. Okay. But I see that I'm running out of time, so if I may summarize. The government here seeks a remand of this decision to the Board of Immigration Appeals to allow it to consider this Court's subsequent precedent in Ruiz-Fidal and to resolve any conflict that its decision may have with that – with the circuit precedent. Thank you. Ms. Cooper. Your Honor, we'll waive rebuttal unless there's any questions from the Court. I'm sorry. I didn't hear you. I'm sorry. We'll waive rebuttal unless there's any questions from the Court.  Thank you.  Thank you. Counsel, we appreciate your argument. The matter just argued will be submitted.
judges: Rymer, Rawlinson, Callahan